# Board of Education of Guthrie Independent Graded School Dist. v. Todd County Board of Education et al.

March 13, 1942.

N. E. Frey for appellant.

J. D. Standard for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On and prior to January 1, 1926, there existed a public school district in Guthrie, Ky., for colored pupils, with Mose Marshall, William Johnson and Dan Kenner, colored patrons thereof, as its trustees. On the day indicated one T. P. Norris and wife conveyed a vacant lot (166 x 160 feet) to the trustees and their successors in office for a school building lot, and followed up their conveyance by constructing thereon a school building for the

use of the colored district, which its trustees accepted and thereafter occupied it as the district school building in which the public school therein was conducted. Later, the law was amended so as to vest the management of the school in a created board with jurisdiction throughout the county and designated it as "The County Board of Education," and the colored school at Guthrie under that law passed under the management of the Todd County Board of Education in lieu of management by three trustees as was theretofore done.

After the management of the school was conferred on the county board of education it took out a fire policy on the school building of the colored school district in Guthrie for the sum of $500. While the policy was in force—and before the management of the colored school was again transferred to appellant, Board of Education of the Guthrie Independent Graded School District, within the area of which the colored school was located—the colored school building burned and the Todd County Board of Education collected the amount of the policy ($500) and put it into, and as a part of the general school fund for the county. After appellant became vested with the management of the school under the provisions of Sections 4399-3 and 4399-3a of Baldwin's Kentucky Statutes Service for April, 1939, it demanded of defendant and appellee, Todd County Board of Education, the payment to it of the $500 as proceeds that it (county board) had collected for the destruction of the school building under the policy it had taken out thereon.

The petition averred the facts as we have related them, and expressly averred that the contributions by Norris were gifts to the Guthrie Common School District for Colored People and for the exclusive benefit of its pupils. Defendants (consisting of the county board of education, and its members) demurred to the petition, which the court sustained. Plaintiff declining to plead further, its petition was dismissed, to reverse which it prosecutes this appeal.

Section 4399-57 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes—and which was in effect at the time of the transactions involved—provides in substance that donations, gifts, grants or devises, wherein the intention is expressed, in aid of the education of white or colored children "in any school district of this Common-

wealth, shall be held and used for the purposes specified in such donation, gift, grant, or devise,'' and that the district board of education governing the donee district shall employ the donated property for the exclusive benefit of the district to which the donation was made, provided "that the purpose for which [the property is] used shall be in harmony with the aims and general program of public education in this Commonwealth."

It is argued by learned counsel for defendants that there was no expressed purpose by Norris in the deed he executed to the lot that his donation thereof should be for the use and benefit of the Guthrie Colored School District, nor was there any such written expressed trust in his donation of the fund necessary to construct the building thereon; but it is alleged in the petition that both donations were made with such expressed purpose, and which we think brings each of them within the purview of the statute and that the donated property thereby became a trust for the exclusive benefit of the donee, colored district.

In the case of Board of Education of Jefferson County v. Board of Education of City of Louisville, 182 Ky. 544, 206 S. W. 869, we held, following a number of cited prior opinions, that "all public school property is held in trust for common school purposes and all persons holding the title to such property are mere trustees appointed, for the time being, to control and manage the property so as to promote the efficiency of the common school system. Such trustees have no vested right to the property. They may be changed at any time, and new agencies may be appointed to take their place, or their jurisdiction may cease because the territory under their control may pass to some one else." It was further said in that opinion that "Whether the county board or the city board [other independent agency] is vested with the title and control of public school property depends solely on the location of such property. If it be located within the territorial jurisdiction of the city board, the title and control are vested in that board. If it be located within the territorial jurisdiction of the county board, that board has the title and control. That being true, it is immaterial how the change in territorial jurisdiction is brought about. All that is necessary is that the change be lawfully made. When that is done, the change of ownership and control necessarily follows."

With the premise assumed by the defendants that the donated property in this case was not a trust fund under the provisions of Section 4399-57, supra, it is accordingly argued by counsel that the donated property here involved became a part of the sum total of public school property of the entire county under the jurisdiction of defendants, with the colored school district at Guthrie—to which the donations were made—having no superior right thereto; and that the county board of education, under the provisions of Section 4399-20 of our same statutes, had the right to appropriate the proceeds of the fire policy held by it on the colored school house of the donee and to retain it as public school funds for the benefit of all public schools within the confines of its jurisdiction. That contention, however, is in direct conflict with Section 4399-57, supra, and for which reason it can not be accepted and approved by us.

The jurisdiction conferred by Section 4399-20, supra—as it is clearly to be gathered from our entire school law—relates to school property arising from public funds and to its proper proportion of which all school units are entitled. The section necessarily does not apply to specific charitable trust donations made to a particular type of school district for its exclusive benefit, and which is controlled by Section 4399-57 of our Statutes supra.

We have been cited to no case or text sustaining a contrary conclusion in any jurisdiction where a similar statute to the one referred to (4399-57) was a part of the general school law. A number of cases are cited in brief of learned counsel for defendant construing our multifarious and ever-changing statutes relating to public education, which it is insisted sustain counsel's contention; but an examination thereof clearly reveals a misapplication of the principles involved, and shows that the points decided have no relevancy to the question here involved and which those opinions did not attempt to decide.

Lastly, it is argued by same counsel that the contract of insurance of the colored school building in Guthrie, Kentucky, by defendant, county board of education, while that school district was under its jurisdiction, was "a personal contract and inured to the benefit of the Todd County Board of Education by whom it was made

and by whom the premiums were paid, * * * the sum paid to it by reason of this insurance was in no proper or just sense the proceeds of the property and did not take the place of the property insured.'' The text in 26 C. J., 434, Section 581, and 14 R. C. L. page 1365, Section 535, are referred to in substantiation of that contention, as well as the cases of Spalding v. Miller, 103 Ky. 405, 45 S. W. 462, 20 Ky. Law Rep. 131; and Saunders (Sanders), Trustee, v. Armstrong, 61 S. W. 700, 22 Ky. Law Rep. 1789. But an examination of those cases and texts does not sustain the interpretation of counsel. They involve questions arising between the nominally insured, and the insurer in regard to the payment of the proceeds of a policy contracted in the name of the insured as the sole beneficiary, and wherein no notice was contained as to the true beneficial owners of the property insured, nor was it revealed that the nominal insured individual was acting in any capacity as agent or trustee for the true and actual owner or owners of the property. Furthermore, the cited domestic cases clearly point out that as between the owner of particular interest in the insured property and the owner in fee, the proceeds of a policy, taken out by the particular estate owner on his interest only, and where the policy does not reveal that he is attempting to insure the interest of any one except his own, the procurer of the policy is entitled to the entire proceeds although it may be in an amount equal to the value of the entire title out of which his interest is carved. Here the law, as we have seen, made the defendant Board, at the time it took out the policy, only a naked trustee of the property whilst the real beneficiaries were the pupils for whose benefit the property was donated. In such cases the law, as pointed out in the opinions cited by counsel, declares that the equitable owners, as between themselves and a naked trustee, are entitled to the proceeds of the insurance.

It follows from what has been said that the court erred in sustaining the demurrer to the petition, and the judgment is reversed with directions to set it aside and to overrule it, and for proceedings consistent with this opinion.